UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JENNIPHER FORTE,
*on her own behalf and on behalf of others similarly situated,*

    Plaintiff,

    v.

INSOMNIA COOKIES, LLC d/b/a INSOMNIA COOKIES; SERVE U BRANDS, INC; and SETH BERKOWITZ,

    Defendants.

CAUSE NO. 3:23-cv-00551 DRL-MGG

OPINION AND ORDER

Jennipher Forte sues Insomnia Cookies, LLC, Serve U Brands, Inc., and Seth Berkowitz (collectively "Insomnia") for alleged violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, and Indiana wage-and-hour laws. Her complaint also includes collective action and class action allegations. Insomnia today asks the court to enforce an arbitration agreement and dismiss the case. The court grants the motion to compel arbitration but only stays the action here.

STANDARD

The Federal Arbitration Act (FAA) treats written arbitration agreements as "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of a contract." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 629-30 (2009) (quoting 9 U.S.C. § 2). "[T]he question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986); *see also Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416-17 (2019). Under the FAA, three things are needed to compel arbitration: (1) a written arbitration agreement, (2) a dispute within the agreement's scope, and (3) a refusal to arbitrate that dispute. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). "Whether parties have a valid arbitration agreement at all" is a "gateway matter[]" to the question of arbitrability. *Herrington v. Waterstone Mortg.*

*Corp.*, 907 F.3d 502, 506 (7th Cir. 2018) (quoting *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 n.2 (2013)). The question of arbitrability—whether the parties must submit a particular dispute to arbitration—is "an issue for judicial determination . . . [u]nless the parties clearly and unmistakably provide otherwise[.]" *AT&T*, 475 U.S. at 649.

The party asserting the existence of a valid and enforceable contract to arbitrate, and seeking to enforce an arbitration agreement, bears the burden. *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1063 (7th Cir. 2018). Although the FAA does not provide an evidentiary standard under which to consider an objection to arbitration, courts "have analogized the standard to that required of a party opposing summary judgment . . . the opposing party must demonstrate that a genuine issue of material fact warranting a trial exists." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002).

DISCUSSION

Here, only the first of the three requirements to compel arbitration is at issue—whether there is an arbitration agreement. "An agreement to arbitrate is treated like any other contract, and we look to the state law that governs the formation of contracts to determine if there was a valid agreement." *Baumann v. Finish Line, Inc.*, 421 F. Appx. 632, 634 (7th Cir. 2011) (citing *Tinder*, 305 F.3d at 733). Because all relevant events occurred in Indiana, Indiana law determines the validity of the agreement—a point not in contention. *Id.* "The basic requirements for a contract are offer, acceptance, consideration, and a meeting of the minds of the contracting parties." *Conwell v. Gray Loon Outdoor Mktg. Grp., Inc.*, 906 N.E.2d 805, 812-13 (Ind. 2009). "The intention of the parties to a contract is a factual matter to be determined from all the circumstances." *Zimmerman v. McColley*, 826 N.E.2d 71, 77 (Ind. Ct. App. 2005).[1]

---

[1] When determining whether there is a genuine issue of material fact as to the formation of the arbitration agreement, this court may consider the reply affidavit of Suzanne Toner [46], as courts in this circuit routinely consider evidence included in a reply brief when ruling on a motion to compel arbitration so long as the party is expanding or clarifying arguments found in its initial briefing. *Reis v. Robbins*, 2015 U.S. Dist. LEXIS 23207, 5 (S.D. Ind. Feb. 26, 2015); *see also Zacher v. Comcast Cable Commc'ns LLC*, 2018 U.S. Dist. LEXIS 102956, 7 (N.D. Ill. June 20, 2018); *Williams v. Katten Muchin & Zavis*, 837 F. Supp. 1430, 1437 (N.D. Ill. 1993).

This dispute centers on whether a clickwrap arbitration agreement was completed by Ms. Forte. She says she does not believe she completed the agreement and suggests her manager may have logged into her account to consent to it. The metadata provided by Insomnia shows that the agreement was completed on December 14, 2022 under Ms. Forte's login. "[W]hen an employee must create a password and username, is prompted to click on a link identifying an arbitration agreement, is notified that the agreement is a condition of employment, and takes affirmative action indicating assent to the arbitration agreement, the contract is valid." *See Valesh v. Bajco Int'l, LLC*, 2021 U.S. Dist. LEXIS 201127, 8-9 (N.D. Ind. Oct. 19, 2021). "Under Indiana law, a person is presumed to understand the documents [she] signs and cannot be released from the terms of a contract due to [her] failure to read it." *See Earley v. Edward Jones & Co., LP*, 105 N.E.3d 1094, 1100 (Ind. Ct. App. 2018) (citations omitted).

Ms. Forte argues that she never saw the "arbitration agreement"—not until this suit—and never completed the clickwrap online, so there is no agreement to arbitrate. In her declaration, she asserts she began work on December 14, 2022, before her orientation, to help fill a large order [42-1 ¶ 6]. She says she did not complete any paperwork or orientation on December 14, 2022 [42-1 ¶ 8]. The following day, she had an orientation with her manager, Kenneth Pinkerton, beginning with a demonstration of stocking the cookies [42-1 ¶¶ 9–10]. She then was led into the manager's office by Mr. Pinkerton to complete onboarding and orientation videos relating to workplace safety and sexual harassment [42-1 ¶¶ 11, 14, 15]. After resetting her password due to a failed login attempt, and sharing this password with Mr. Pinkerton, she logged into her account [42-1 ¶ 13]. In Ms. Forte's affidavit, she explains that Mr. Pinkerton then took control of the store's computer, already logged into her account, for about ten minutes [42-1 ¶ 15]. Ms. Forte says that Mr. Pinkerton explained to her he needed to enter some personal information that she had provided on her application materials and asked her not to watch [42-1 ¶ 15]. Ms. Forte accommodated his request, only watching the computer once he was done to complete the videos [42-1 ¶ 16]. Ms. Forte does not "believe [she] signed an arbitration agreement," but that Mr.

3

Pinkerton "may have completed other documents during the account setup, unbeknownst to [her] and without [her] consent" [42-1 ¶¶ 21-22].

Insomnia tells a different story. It contends that Ms. Forte reviewed and assented to each of the documents, including the arbitration agreement, on December 14, 2022 (not December 15, 2022). To substantiate this, it attaches the metadata for Ms. Forte's onboarding, which demonstrates the agreement being signed from her account and IP address 73.211.40.110 on December 14, 2022 at 20:26 UTC [46-2 at 5]. It explains the IP address attached to this entry is not that of the store's computer [46 ¶ 8]. Furthermore, Ms. Forte's timecard demonstrates that she did not work extra hours to fill a large order on December 14, 2022 [46 ¶ 10; 46-3 at 2]. Rather, Insomnia claims the first day Ms. Forte worked was December 19, 2022 [46 ¶ 11]. Insomnia also produces the metadata to show that Ms. Forte completed the anti-harassment materials as part of orientation on December 23, 2022 [46 ¶¶ 12-13; 46-4 at 3]. Finally, Insomnia attaches metadata of Ms. Forte's failed login attempts that only show failed attempts on or after December 26, 2022 [46 ¶¶14-15; 46-5 at 2-3].

"[A] party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests." *Tinder*, 305 F.3d at 735. A genuine issue is not present when a plaintiff merely provides an affidavit saying she does "not remember receiving or seeing the" arbitration agreement when the defendant provided two affidavits stating that "the [agreement] was definitely sent and presumably received with her paycheck." *Id.* at 736. Here, Ms. Forte does not say she does not remember seeing the arbitration agreement. Rather, she claims that she does "not believe [she] signed an arbitration agreement" [42-1 ¶ 22]. Her belief that she did not sign any agreement is more definitive than simply not recalling signing an agreement; however, it is still not an affirmative statement that she did not sign any agreement. Even if the court ignores the distinction between a belief and a positive assertion, a triable issue of fact does not exist when a plaintiff has only her own word in contradiction to the defendant's metadata, *see*,

*e.g., Valesh*, 2021 U.S. Dist. LEXIS 201127 at 12-13; *Hulwick v. CBOCS E., Inc.*, 2018 U.S. Dist. LEXIS 97203, 13 (N.D. Ind. June 11, 2018), and when it debunks the alternative theory she guesses at.

In *Valesh*, 2021 U.S. Dist. LEXIS 201127 at 9-11, this court found that although the plaintiff was "certain he had never seen the arbitration agreement or signed it," his unique username and password were used to complete the form, so it was validly formed. Mr. Valesh suggested that his manager completed the form for him while he was delivering pizzas, but the court concluded the theory wasn't a "justifiable inference from [that] record," nor that it "create[d] a triable issue for the jury." *Id.* at 12. Just like Mr. Valesh, Ms. Forte's assertions that she did not login and complete the agreement on December 14, 2022, and that perhaps her manager did it for her the next day are not sufficient to warrant a trial. The first is mere uncorroborated belief, and the latter is mere speculation, and speculation undone by the metadata. Neither creates a factual issue today.

In *Hulwick*, 2018 U.S. Dist. LEXIS 97203 at 13, the court compelled arbitration, finding that the plaintiff's assertions she did not complete the ADR module on a human resources platform did not raise a genuine question of material fact considering the login and metadata records. There, Cracker Barrel's records indicated that Ms. Hulwick completed the agreement with her login. *Id.* at 2-3. She asserted she did not complete the agreement, and "theorize[d] that somebody else used her password, which she assert[ed] was posted in a place that all management employees could access." *Id.* at 3. Here, quite similarly, Ms. Forte suggests it may be possible that Mr. Pinkerton completed the arbitration agreement for her, similar to Ms. Hulwick's theory. Just as Ms. Hulwick was unsuccessful in creating a genuine factual issue about the arbitration agreement's formation so too has Ms. Forte fallen short.

Ms. Forte relies on three unconvincing cases. First, she relies on *Baker v. Santander Consumer USA*, 2019 U.S. Dist. LEXIS 168200 (N.D. Ill. Sept. 30, 2019). There, the employer's only evidence that a valid agreement was formed was its declarations stating the company's policy for new employees included signing an agreement—a position combatted by the plaintiff's affirmative declaration under oath that he

5

never had access to the arbitration agreement. *Id.* at 8-9, 11. That is unlike a case where a plaintiff has merely expressed an unsure belief in the face of metadata and records showing the arbitration agreement was entered into with her login credentials.

Second, Ms. Forte relies on *Burke v. Amedisys, Inc.*, 2023 U.S. Dist. LEXIS 61167 (N.D. Ill. Jan. 11, 2023). There, the court favored an evidentiary hearing. *Id.* at 7. The employer submitted a Dispute Resolution Agreement with the employee's electronic signature on it, and an affidavit describing the employer's practice of requiring new hires sign the arbitration agreement. *Id.* at 6. The employee submitted her own affidavit saying she did not sign any arbitration agreement, but she also retained a digital forensics expert who contended the metadata for her electronic signature on the agreement was altered. *Id.* at 7. Once more, this case today is readily different.

Last, Ms. Forte relies on *Friends for Health: Supporting the N. Shore Health Ctr. v. Paypal, Inc.*, 2018 U.S. Dist. LEXIS 98187, 5 (N.D. Ill. June 12, 2018), as a case that "den[ied] [a] motion to compel arbitration based on the plaintiff's declaration that he never signed the agreement provided by the defendants" [42 at 11]. It did not. In *Friends for Health*, the court actually found the opposite: that the plaintiff's own affidavit denying receipt of the email containing the arbitration agreement, even with the affidavit of another demonstrating other missing emails, did not create genuine fact issue such that the court enforced the arbitration agreement. *Id.* at 20.

The court will compel arbitration. Insomnia also requests that this case be dismissed. The law has "emphasized in a variety of contexts, [that] district courts should retain jurisdiction over a suit that must be interrupted for reference of an issue to another forum rather than dismiss it if, should it be dismissed, there might later be grounds for reinstating it." *Tice v. Am. Airlines, Inc.*, 288 F.3d 313, 318 (7th Cir. 2002). Courts tend to favor dismissal of a case if "all of the claims contained therein are subject to arbitration— resulting in 'a judicially-created exception to the general rule which indicates district courts may, in their discretion, dismiss an action rather than stay it where it is clear the entire controversy between the parties

will be resolved by arbitration.'" *Johnson v. Orkin, LLC*, 928 F. Supp.2d 989, 1008 (N.D. Ill. 2013) (quoting *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769-70 (8th Cir. 2011)). This circuit has not directly addressed this exception to the general rule but has affirmed cases that have used it to dismiss an action that was subject to arbitration. *See, e.g.*, *Baumann v. Finish Line, Inc.*, 421 F. Appx. 632, 636 (7th Cir. 2011); *Am. Int'l Specialty Lines Ins. Co. v. Elec. Data Sys. Corp.*, 347 F.3d 665, 668 (7th Cir. 2003).

Here, Ms. Forte argues that dismissing her collective or class claim now would be premature. She asserts that the appropriate action is to stay the case. Arbitration agreements containing class waivers are enforceable in claims brought under the FLSA. *Herrington v. Waterstone Mortg. Corp.*, 907 F.3d 502, 503 (7th Cir. 2018). Whether pending class certification "might later be grounds for reinstating" the case so as to require a stay of the motion to dismiss has not been addressed except at the district level, and courts have favored a stay in such situations. *See, e.g., Miracle-Pond v. Shutterfly, Inc.*, 2020 U.S. Dist. LEXIS 86083, 24 (N.D. Ill. May 15, 2020); *Pretzsch v. Focus Servs.*, 2019 U.S. Dist. LEXIS 249979, 11 (N.D. Ill. Dec. 2, 2019); *see also Tice*, 288 F.3d at 318. The court has dismissed a similar case before, but there the "conditional certification of the collective action was vacated" to facilitate the dismissal. *Valesh*, 2021 U.S. Dist. LEXIS 201127 at 14.

Here, dismissal is inappropriate as there might later be grounds for reinstating the claims after arbitration. *See Tice*, 288 F.3d at 318. The parties' arbitration agreement provides that "the arbitrator shall have the exclusive authority to resolve any dispute relating to the arbitrability of any individual claim" [40-1 § 4]. Due to this, it is not for the court to decide whether the scope of the claim is appropriate for arbitration, so it would be premature to conclude that "all of the claims . . . are subject to arbitration"—the exception to the general rule of staying the case pending arbitration. *Johnson*, 928 F. Supp.2d at 1008. Additionally, the arbitration agreement provides that "[a]ny disputes concerning the applicability or validity of this [class action] [w]aiver shall be decided by a court of competent jurisdiction" [40-1 § 3]. This leaves an open question that does not need answered today.

CONCLUSION

Accordingly, the court GRANTS the motion to compel arbitration [37], DENIES the motion to dismiss [37], STAYS the case pending arbitration, and ORDERS the parties to file a joint status report with the court within twenty-one (21) days of the completion of arbitration.

SO ORDERED.

December 21, 2023                                   *s/ Damon R. Leichty*
                                                    Judge, United States District Court